James M. Wagstaffe (95535)
Frank Busch (258288)
**WAGSTAFFE, VON LOEWENFELDT,**
**BUSCH & RADWICK LLP**
100 Pine Street, Suite 725
San Francisco, CA 94111
Tel: (415) 357-8900
Fax: (415) 357-8910
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com


Carol C. Villegas (*pro hac vice* forthcoming)
Michael P. Canty (*pro hac vice* forthcoming)
Melissa H. Nafash (*pro hac vice* forthcoming)
Ross M. Kamhi (*pro hac vice* forthcoming)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
mcanty@labaton.com
mnafash@labaton.com
rkamhi@labaton.com

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH WELLMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Flo Health, Inc., a Delaware corporation.<br><br>Defendant. | Case No.: 3:21-cv-01099<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sarah Wellman ("Plaintiff"), on behalf herself and all others similarly situated, asserts the following against Defendant Flo Health, Inc. ("Flo Health"), based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

## SUMMARY OF ALLEGATIONS

1.      Flo Health owns and developed  the Flo Period & Ovulation Tracker ("Flo App" or "App"), one of the most popular health and fitness mobile applications.

2.      The Flo App purports to use artificial intelligence to provide advice and assistance related to women's health, such as by serving as an ovulation calendar, period tracker, pregnancy guide, and wellness and lifestyle tracker.

3.      Flo Health touts that its app is the "#1 mobile product for women's health." The Flo App has been installed more than 165 million times and has over 38 million monthly active users. The App has also been rated the #1 period tracker in the United States based on active audience and as the #1 most downloaded health app in the Apple App Store.[1]

4.      In order to use the Flo App, millions of users—including Plaintiff—provide Flo Health with personally identifying information (*e.g.*, their names, email addresses, dates of birth, and places of residence), along with intimate details about their sexual health, menstruation cycles, gynecological health, and physical well-being through a series of "survey questions." These questions cover extremely personal topics and include, for example: (1) "do you experience any pain during sex?" (2) "how often do you have sex?" (3) "how often do you masturbate?" (4) "have you noticed a decrease in sexual desire?" (5) "are you sexually active during your period?" and (6) "What type of relationship do you have at present?"

5.      Users also provided intimate, personal health details in response to probing survey questions about health and wellness, such as: (1) "do you smoke" (2) "how often do you experience stress? (3) "do you want to change your weight?" (4) "do you follow a particular diet?" (5) "how often do you exercise?" (6) "do you get yeast infections?" (6) "do you have any chronic diseases?" and (7) "do you have any reproductive system diseases?"

---

[1] The Flo App was also feature as the "App of the Day" in the Apple App Store in over 30 countries.

6.  Within the first few minutes of using the Flo App, users answer over thirty survey questions like these. As users continue to use the app, they are encouraged by Flo Health to provide more and more intimate health data, including daily information about whether they have their period, their weight, how long they slept, whether they had sex (as well as their sex drive, if sex was unprotected, or if they masturbated), their mood (ranging from "calm" to "very self-critical,") and if they have any health symptoms (like headaches, breast tenderness, acne, or fatigue).

7.  By providing this information, Flo Health claims to predict ovulation, aid in pregnancy and childbirth, and provide lifestyle and wellness suggestions, allowing users to "take full control of [their] health."

8.  Plaintiff and Class members provided this information to Flo Health based on the company's repeated assurances that their intimate health data would remain protected and confidential and would not be disclosed to third parties.

9.  Flo Health's privacy policies and public assurances have claimed—time and time again—that Flo Health would not share users' intimate health data with **anyone**. Flo Health's website touts that "[p]rivacy in the digital age is of utmost importance. Flo provides a secure platform for millions of women globally."[2]

10.  Similarly, Flo Health's privacy policy states, in all capital letters, that it "WILL NOT TRANSMIT ANY OF YOUR PERSONAL DATA TO THIRD PARTIES, EXCEPT IF IT IS REQUIRED TO PROVIDE THE SERVICE TO YOU (E.G. TECHNICAL SERVICE PROVIDERS), UNLESS WE HAVE ASKED FOR YOUR EXPLICIT CONSENT." Flo Health assured users that these third parties would not receive "survey results," "information regarding your marked cycles, pregnancy, symptoms, notes" or information about "which articles [users] view" *i.e.*, users' intimate health data.  Flo Health further assured users that these third parties "will never use such information for any other purpose except to provide services in connection

---

[2] *About Us*, FLO HEALTH, INC., https://flo.health/our-mission (last visited Jan. 27, 2021).

with the App."[3]

11.     These assurances were patently false. In February 2019, a report published by the *Wall Street Journal* revealed that, despite Flo Health's promises that it would not share intimate health data, Flo Health had spent years disclosing the intimate health data that users entered into the Flo App to dozens of third parties, including major advertising companies such as Facebook, Inc. ("Facebook") and Google, LLC ("Google"), who were free to use this data for their own purposes.

12.     In response to this revelation, the Federal Trade Commission ("FTC") launched its own investigation into Flo Health's data privacy and disclosure practices and ultimately filed a complaint, charging Flo Health with making a variety of fraudulent misrepresentations to Flo App users in violation of their privacy rights.

13.     On January 13, 2021, Flo Health entered into a settlement with the FTC that prohibited Flo Health from further misrepresenting the purposes for which or entities to whom it discloses users' intimate health data, as well as obtain an independent review of its privacy policy, obtain user consent before sharing their data, and notify third parties that previously received users' intimate health data to destroy that information.[4]

14.     If Plaintiff and Class members had known that Flo Health would share their intimate health data, they would not have used the Flo App.

15.     Flo Health's data disclosure practices constitute an extreme invasion of Plaintiff's and Class members' right to privacy and violates federal and state statutory and common law.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of

---

[3] *Privacy Policy*, FLO HEALTH, INC., https://flo.health/privacy-policy-archived/may-25-2018 (effective May 25, 2018).

[4] *Developer of Popular Women's Fertility-Tracking App Settles FTC Allegations that it Mislead Consumers About the Disclosure of their Health Data*, FTC, (Jan. 13, 2021), https://www.ftc.gov/news-events/press-releases/2021/01/developer-popular-womens-fertility-tracking-app-settles-ftc.

interest and costs, there are more than 100 putative class members defined below, and minimal diversity exists because a significant portion of putative class members are citizens of a state different from the citizenship of Defendant.

17.     This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 since this suit is brought under the laws of the United States, *i.e.*, the Stored Communications Act, 18 U.S.C. § 2702, *et seq.*, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remaining state common law and statutory claims as these state law claims are part of the same case or controversy as the federal statutory claim over which the Court has original jurisdiction.

18.     This Court has specific personal jurisdiction over Flo Health because it consented to jurisdiction in this District in its Terms of Use, which states:

> Any dispute arising from this Agreement shall be governed by the laws of the State of California without regard to its conflict of law provisions. **SOLE AND EXCLUSIVE JURISDICTION FOR ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE IN AN APPROPRIATE STATE OR FEDERAL COURT LOCATED IN SAN FRANCISCO COUNTY, STATE OF CALIFORNIA** . . . .[5]

19.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), (c), and (d) because Flo Health transacts business in this District and a substantial portion of the events giving rise to the claims occurred in this District.

20.     Intra-district Assignment: A substantial part of the events and omissions giving rise to the violations of law alleged herein occurred in the County of San Francisco, and as such, this action may properly be assigned to the San Francisco or Oakland divisions of this Court pursuant to Civil Local Rule 3-2(c).

## **PARTIES**

### A.     **Plaintiff**

21.     Plaintiff Sarah Wellman ("Plaintiff") is a natural person and citizen of California and a resident of Sonoma County.

---

[5] *Terms of Use*, FLO HEALTH, INC., https://flo.health/terms-of-service (effective Feb. 5, 2020).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

22.     Plaintiff Wellman downloaded the Flo App from the Apple app store in 2018 and was an active user until March 2020.

23.     Plaintiff Wellman provided Flo Health with her intimate health data, including information and/or symptoms about her health and wellness, menstruation cycle, sexual activity, and pregnancy.

24.     Plaintiff Wellman believed that her intimate health data would stay private and that Flo Health would not disclose this information to third parties, like Facebook or Google. Plaintiff Wellman did not consent or provide permission for Flo Health to do so.

25.     In direct contravention to its privacy policy and public assurances, Flo Health disclosed Ms. Wellman's intimate health data without her knowledge or consent to third parties.

26.     Plaintiff Wellman would not have used the Flo App if she had known that they would share her intimate health data with third parties.

**B.     Defendant**

27.     Defendant Flo Health, Inc. is a Delaware corporation with principal executive offices located at 1013 Centre Road, Suite 403-B, Wilmington, Delaware 19805.

## FACTUAL BACKGROUND

**I.     Founding of Flo Health, Inc.**

28.     Flo Health began as a startup in 2015 owned by a group of mobile app developers based in Minsk, Belarus. That same year, the company released the Flo App, the first mobile application to make use of artificial intelligence to accurately predict reproductive cycles.

29.     When first launched, the Flo App operated essentially as a calendar that allowed users to track their period and ovulation. Over time, the App's developers expanded the Flo App's functionality to assist with all phases of the reproductive cycle, including the start of menstruation, cycle tracking, preparation for conception, pregnancy, early motherhood, and menopause. The Flo App also expanded to provide users overall health and wellness suggestions.

30.     As Flo App's features expanded, the App requested a wider and wider range of personal information from its users, including intimate personal details like a user's history of

contraceptive methods, vaginal discharge, diseases, water intake, weight, pains and other physical or mental symptoms, mood swings, and sexual activity (including the users' sexual desire levels, whether they experience pain during sex, or did not use protection). Users can also write "personal notes" to log additional information in the App.

31.     In 2017, Flo Health further expanded Flo App's functionality to include social media features alongside its services as a health product. The App's developers included a new community section on the App, allowing users to anonymously ask and answer questions related to women's health.

32.     That same year, Flo Health gained international attention by working with the United Nations Population Fund as part of its "Let's Talk About it. Period." campaign, which aimed to increase public awareness of social and health issues related to menstruation.

33.     Throughout this period, Flo App steadily grew more popular. By December 2020, 150 million users had downloaded the App. The App has been rated #1 period tracker in the United States based on active audience and as the #1 most downloaded health app in the Apple App Store.

34.     Through its success, Flo Health has gathered and collected intimate health details from over 100 million users, including Plaintiff. Users provided this information based on Flo Health's repeated assurances that this information would remain private and that they would not share users' intimate health data.

35.     Flo Health promised that it would, under no circumstances, share users' intimate health data without user consent. While Flo Health disclosed it might share "certain" information with third-parties who it uses to "supply software applications, web hosting an other technologies for the App," Flo Health promised this would not include "information regarding your marked cycles, pregnancy, symptoms, notes and other information entered by [users]" or "survey results" and "articles [users] view."

36.     However, in February 2019, the *Wall Street Journal* released a bombshell report revealing for the first time that Flo Health shares its users' intimate health data with third-parties,

like Facebook and Google, including when a user was on their period or intended to get pregnant.[6]

37.     Further investigations have revealed that Facebook was not the only third-party to which Flo Health disclosed consumers' intimate health data. Between at least 2016 and 2019, Flo Health contracted with dozens of third-party firms to provide, among other things, various marketing and analytics services in connection with the Flo App. These firms included Facebook, Google, and mobile analytics firms AppsFlyer Ltd. ("AppsFlyer") and Flurry, Inc. ("Flurry").

38.     Despite Flo Health's representations that third parties would not receive users' survey results and "information regarding your marked cycles, pregnancy, symptoms, notes and other information entered by [users]," Flo Health disclosed users' intimate health data to third parties, including some of the largest advertising companies in the country.

39.     Further, despite Flo Health's promise that third parties would only receive data "as necessary to perform their work" and "will never use such information for any other purpose except to provide services in connection with the App," Flo Health did not contractually limit how these third parties could use this data.

40.     In fact, the terms of service governing Flo Health's agreement with these third parties allowed them to use the data for their own purposes, completely unrelated to services provided in connection with the App.

41.     Flo Health entered into these contracts to disclose users' sensitive health data without Plaintiff's and Class members' knowledge or consent, in violation of their privacy rights and federal law.

**II.     Flo Health Designed its App to Facilitate the Collection of Users' Private Data**

42.     Flo Health designed the Flo App to request users to input intimate health and lifestyle-related information under the guise that they would receive better services. When a user creates a new account on the Flo App, the app will ask the user several question related to the

---

[6] *Sam Schechner and Mark Secada, You Give Apps Sensitive Personal Information. Then They Tell Facebook*, WALL STREET JOURNAL, (Feb. 22, 2019 11:07 AM), https://www.wsj.com/articles/you-give-apps-sensitive-personal-information-then-they-tell-facebook-11550851636.

8

timing of their menstrual cycle, the discomfort of their menstrual cycle, mood swings, preferred birth control methods, reproductive health disorders, and their level of satisfaction with their sex life and romantic relationships. Some of these questions are reflected in the example screenshots below:

**Do you experience discomfort due to any of the following?**

Painful menstrual cramps ○

PMS symptoms ○

Unusual discharge ○

Heavy menstrual flow ○

Mood swings ○

Other ○

No, nothing bothers me ✓

Next

**What would you like to change about your sex life?**

Nothing, I'm totally satisfied ○

I'm not sexually active now ○

Painful sex ○

Difficulty with orgasm ○

Low libido ○

Communication ○

Poor body image ○

Other ✓

Next

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

43.     The Flo App asks users to input over 30 responses to intimate, personal questions like these all while setting up the App for the first time, including the following:

    a.      How long have you been trying to conceive?

    b.      Do you have any reproductive diseases?

    c.      What medication are you currently taking? How often?

    d.      How often do you have sex?

    e.      Do you experience any pain during sex?

    f.      How often do you masturbate?

    g.      Is it easy for you to orgasm?

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

44.     The Flo App also regularly encourages users to update the App with vast quantities of additional intimate health-related information as they continue to use the App. For example, the interface of the Flo App suggests that users "[l]og your menstruation days in a handy period calendar, ovulation and fertility tracker, schedule menstrual cycle reminders, record moods and PMS symptoms, use a due date calculator, follow a pregnancy calendar . . . ." As the screenshots below demonstrate, the information collected is extremely sensitive and includes information about a user's sexual activity, sex drive, mood, premenstrual systems, and vaginal discharge, among other things:

 

45.     Flo Health entices users to input this information to "stay on top of [their] health," explaining that "[l]ogging symptoms helps Flo detect possible imbalances in your body and

1    advi[s]e you to see a doctor."

2         46.    By encouraging millions of users to provide extensive information about their

3    emotional and physical health, as well as their personal lifestyles and sexual activity, to the Flo

4    App, Flo Health has collected massive volumes of deeply intimate health data about millions of

5    consumers, including Plaintiff.

6         47.    Despite Flo Health's repeated representations from 2017 to 2019 that it would

7    protect users' intimate private information, Flo Health contracted with numerous third parties

8    granting them full access to any information obtained from Flo App users, which they could use

9    for their own purposes, including advertising and product improvement unrelated to the Flo App.

10        48.    Specifically, Flo Health provided third parties with "Standard App Events" and

11   "Custom App Events" created each time users interact with the Flo App. "Standard App Events"

12   are records of routine app functions, such as launching or closing the app, while "Custom Apps

13   Events," are records of user-app interactions unique to the app itself. For example, when a user

14   enters menstruation dates, their weight, sleep cycle, mood, physical or mental symptoms, or any

15   other information in the Flo App, the Flo App registers the user's interaction with that feature as a

16   Custom App Event. Through these Custom App Events, every single interaction within the Flo

17   App is recorded and stored.

18        49.    Flo Health receives and stores a record of all the Custom App Events that occur in

19   the Flo App across its users' devices. Flo Health claims to make use of these records to improve

20   the Flo App's functionality and identify which features are likely to interest new users.

21        50.    Flo Health purposefully designed the Custom App Events of the Flo App to have a

22   descriptive title. For example, when a user enters the week of their pregnancy into the app's

23   calendar, the Flo App records the Custom App Event "R_PREGNANCY_WEEK_CHOSEN."

24   When a user selects a feature to receive menstruation reminders in the "wanting to get pregnant

25   branch"    of    the    app,    the    Flo    App    records    the    Custom    App    Event

26   "P_ACCEPT_PUSHES_PERIOD."

27        51.    As early as 2016, Flo Health integrated software development tools, known as

28

"software development kits" ("SDKs") into the Flo App. These SDKs were provided by third-party marketing and analytics firms, such as Facebook, Google, Flurry and AppsFlyer, and allowed these firms to review information that users put into the Flo App through Custom App Events.

52.    As a consequence of the way that Flo Health titles the Custom App Events of the Flo App, the Custom App Events convey intimate details about a users' health, including their menstruations, fertility, or pregnancies. For example, if a user indicates a date in the pregnancy calendar, Flo Health is disclosing to third-party marketing and analytics firms, such as Facebook, Google, Flurry and AppsFlyer, that its user is pregnant.  If that user then removes dates from the pregnancy calendar, Flo Health is disclosing to third-party marketing and analytics firms, such as Facebook, Google, Flurry and AppsFlyer, that its user's pregnancy was either voluntarily or involuntarily terminated.  Thus, a Flo Health developer or third party reviewing a record of a user's Custom App Events learns intimate health information about that user, including their reproductive cycle and family planning decisions.

53.    By including intimate health information in the title of the Custom App Events, Flo Health disclosed user's intimate health information to third parties. This directly contradicts Flo Health's statements in its privacy policies that it would not disclose this information.

54.    Despite assurances made to consumers, the company spent years disclosing the intimate health information of millions of users in the form of Custom App Events. For example, Flo Health disclosed Custom App Event information to:

        a.    Facebook from at least June 2016 to February 2019;

        b.    Flurry from at least June 2016 to February 2019;

        c.    Google's subsidiary Fabric from at least November 2016 to February 2019;

        d.    AppsFlyer from at least May 2018 to February 2019; and

        e.    Google from at least September 2018 to February 2019.

### III.     Flo Health's Failure to Obtain User Consent

55.     Between 2017 and 2019, Flo Health made repeated representations to Flo App users, promising that it would keep intimate health data they entered into the App private, and that Flo Health would only use Flo App users' data in order to provide and improve Flo App's services.

56.     Based on Flo Health's representations and the guarantees made in the company's Privacy Policy, millions of users entrusted Flo Health with intimate information regarding their physical and mental health, romantic relationships, sex life, and lifestyle preferences.

57.     Flo Health's privacy policy assures customers that "[w]hen you use Flo, you are trusting us with intimate personal information. We are committed to keeping that trust, which is why our policy as a company is to take every step to ensure that individual user's data and privacy rights are protected . . . ."[7]

58.     More specifically, the Flo Health privacy policy, effective between August 28, 2017 and February 19, 2019, stated that Flo Health "may share certain" personal data with third parties, but only "information that is reasonably necessary to perform their work" which involves "supply[ing] software applications, web hosting, and other technologies for the App."[8]

59.     The same Flo Health privacy policy stated that any information shared with third parties "**exclud[ed] information regarding your marked cycles, pregnancy, symptoms**, notes and other information that is entered by you and that you do not elect to share." (emphasis added).[9]

60.     The same Flo Health privacy policy stated that third parties could not use Flo App users' personal information "for any other purpose except to provide services in connection with the App."[10]

---

[7] *Privacy Policy*, FLO HEALTH, INC., https://flo.health/privacy-policy (effective Oct. 24, 2020).

[8] *Privacy Policy*, FLO HEALTH, INC., https://flo.health/privacy-policy-archived/aug-28-2017 (effective Aug. 28, 2017).

[9] *Id.*

[10] *Id.*

61.     Furthermore, later versions of the Flo Health privacy policy, effective between May 25, 2018 and February 19, 2019, specifically stated that Flo Health would not disclose "any data related to health" to either of the mobile analytics firms AppsFlyer or Flurry:[11]

a.     "AppsFlyer is a mobile marketing platform. We may share certain non-identifiable information about you and some Personal Data **(but never any data related to health)** in order to carry out marketing activities and provide you better and more targeted, tailor-made service." (emphasis added)

b.     "We may share certain non-identifiable information about you and some Personal Data **(but never any data related to health)** with Flurry."

62.     Consistent with the assurances made in the Flo Health privacy policy, new users of the Flo App receive a notification, informing them that personal data disclosed to AppsFlyer is "strictly limited" to technical identifiers, age groups, subscription status, and data indicating that the App has been opened by the user.

---

[11] *Privacy Policy*, FLO HEALTH, INC., https://flo.health/privacy-policy-archived/may-25-2018 (effective May 25, 2018).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____



63.      Flo Health's privacy policy made similar assurances regarding Facebook, Google, and Google's subsidiary Fabric. The privacy policy stated that these third parties would only receive "non-personally identifiable information," "[p]ersonal Data like device identifiers," or "device identifiers." The Privacy Policy did not indicate that these third parties would receive access to any record of the Custom App Events (containing intimate health data) registered by the Flo App.[12]

64.      Specifically, the Flo Privacy Policy stated as follows:

---

[12] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

a. "We use Facebook Analytics and Google Analytics tools to track installs of our App. Normally, Facebook and Google collect **only non-personally identifiable information,** though some **Personal Data like device identifiers** may be transferred to Facebook ...." (emphasis added).

b. "**Fabric may use device identifiers** that are stored on your mobile device and allow us to analyze your use of the App in order to improve our app feature [sic]." (emphasis added).

65.    By disclosing Custom App Events that users generated through interacting with the Flo App, Flo Health consistently violated these terms of its Privacy Policy. As explained above, Custom App Events include explicit, intimate health data related to a user's reproductive cycles, fertility, and other health-related information. When Flo Health shared access to Custom App Events with third parties, Flo Health disclosed intimate "data related to health."

66.    Flo Health further violated the guarantees made in its Privacy Policy by agreeing to contractual terms that directly contradicted its Privacy Policy. When entering into contracts with numerous third parties, Flo Health agreed to boilerplate terms of service which permitted the third party to use any information obtained from Flo App users for the third party's own purposes, including purposes explicitly excluded by the Flo Privacy Policy, such as advertising and marketing:

a. Facebook's Business Tools Terms stated: "We use [aggregated] Event Data to personalize the features and content (including ads and recommendations) we show people on and off our Facebook Company Products .... We may also use Event Data ... for research and development purposes, and to ... improve the Facebook Company Products." That "Event Data" includes Custom App Events.

b. Google Analytics's Terms of Service stated: "Google and its wholly owned subsidiaries may retain and use ... information collected in [Flo Health's] use of the service."

c. AppsFlyer's Terms of Use stated: "You hereby allow AppsFlyer to collect, store, use and process Customer Data," where "Customer Data" was defined to include "data concerning the characteristics and activities" of app users.

d. The Fabric Software and Services Agreement stated: "[Flo Health] acknowledges and agrees that Google [Fabric] may use Usage Data for its own business purposes," where "Usage Data" was defined to mean "all

17

information, data and other content, not including any [identifying data], received by Google related to [Flo Health]'s use of the Fabric Technology.[13]

67.    As a result, at least one of these third parties, Facebook, used Flo App Custom Event data for its own research and development purposes.

68.    Following publication of the *Wall Street Journal* report exposing Flo Health's privacy violations, Flo Health received several hundred complaints from Flo App users about the unauthorized disclosures of health information to Facebook. For example, users stated:

    a.    "I'm absolutely disgusted at this invasion of my most personal information."

    b.    "This is private personal data and I feel disgusted that you are now making this data available to third parties."

    c.    "Why would you EVER think it is ok to share that personal, private information with a third party?"

69.    Alice Berg, a 25-year old student, told the Wall Street Journal "I think it's incredibly dishonest of them that they're just lying to their users especially when it comes to something so sensitive."[14]

70.    Additionally, following the Wall Street Journal publication over 100 Flo App users asked Flo Health to delete their accounts and/or data or told Flo Health they were deleting, or would be deleting, the Flo App.

## IV.    Plaintiff and Class Members Have a Reasonable Expectation of Privacy

71.    Plaintiff and Class members have a reasonable expectation of privacy in their intimate health data, which Defendant collected, stored, and disclosed to third parties.

72.    A number of studies examining the collection and disclosure of consumers' intimate personal data confirms that the disclosure of intimate personal data from millions of

---

[13] Complaint, *In the Matter of Flo Health Inc*., FEDERAL TRADE COMMISSION, No. 1923133, https://www.ftc.gov/system/files/documents/cases/flo_health_complaint.pdf

[14] Sam Schechner and Mark Secada, *You Give Apps Sensitive Personal Information. Then They Tell Facebook*, WALL STREET JOURNAL, (Feb. 22, 2019 11:07 AM), https://www.wsj.com/articles/you-give-apps-sensitive-personal-information-then-they-tell-facebook-11550851636.

individuals, as Flo Health has done here, violates expectations of privacy that have been established as general social norms.

73.     Privacy polls and studies uniformly show that the overwhelming majority of Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares its customers' personal data.

74.     For example, a recent study by *Consumer Reports* shows that 92% of Americans believe that internet companies and websites should be required to obtain consent before selling or sharing their data and the same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data that has been collected about them.[15] Moreover, according to a study by *Pew Research*, a majority of Americans, approximately 79%, are concerned about how data is collected about them by companies.[16]

75.     Flo Health purported to act consistently with consumer expectations by promising not to share their intimate health data with third parties and by promising that the limited data that they did share would only be used to provide the Flo App's services.

76.     Despite these assurances, Flo Health disclosed users' intimate health data to third parties without their consent, allowing these companies to use this information for any purpose. This constitutes a violation of Plaintiff's and Class members' privacy interests, as demonstrated by the outrage users conveyed when they learned that their intimate health data was disclosed by Flo Health to third parties. For example, as one user stated: "Why would you EVER think it is ok to share that personal, private information with a third party?"

**V.     The FTC has Filed Suit and Entered into a Settlement Based on Flo Health's Privacy Violations**

---

[15]     *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety/.

[16]     *Americans and Privacy: Concerned, Confused, and Feeling Lack of Control Over Their Personal Information*, PEW RESEARCH CENTER, (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/.

77.     In response to the *Wall Street Journal's* February 2019 article revealing Flo Health's invasive data sharing practices, the Federal Trade Commission ("FTC") launched an investigation into Flo Health's potential violation of state, federal and international privacy laws.

78.     In January 2020, the FTC filed issued a complaint against Flo Health. The FTC stated that its investigation revealed that Flo Health disclosed the intimate health information of millions of Flo App users to third parties, such as Facebook, Google, Fabric, AppsFlyer and Flurry.

79.     The FTC's investigation further determined that Flo Health conveyed intimate health data in the form of Custom App Events to third parties between at least 2016 and 2019.

80.     Based on the findings of its investigation, the FTC determined that Flo Health had violated the privacy of Flo App users in several ways, including by: violating its privacy policy by disclosing its users health information to third parties; violating its privacy policy by disclosing information beyond non-personally identifiable information, device identifiers, or personal data to third parties; and violating its privacy policy by failing to limit third-party use of its users personal information, among other claims.

81.     Flo Health entered into a settlement with the FTC over its alleged privacy violations on January 13, 2021.

82.     The proposed settlement (currently subject to public comment) would require Flo Health to obtain an independent review of its privacy practices and obtain the consent of app users before making further disclosures of their health information.

83.     The proposed settlement would also prohibit Flo Health from further misrepresenting the purposes for which it or entities to whom it discloses data collect, maintain, use, or disclose the data; how much consumers can control these data uses; its compliance with any privacy, security, or compliance program; and how it collects, maintains, uses, discloses, deletes, or protects users' personal information.

## TOLLING, CONCEALMENT AND ESTOPPEL

84.     The applicable statutes of limitation have been tolled as a result of Flo Health's

knowing and active concealment and denial of the facts alleged herein, namely its practice of disclosing intimate health data to third parties without user consent.

85.     Among other things, Flo Health made misrepresentations and omissions both publicly and in its privacy policy regarding its data sharing practices. Flo Health intentionally concealed the nature and extent of its actions and intentions. To the extent the Flo App made statements regarding Flo Health's service or its privacy policies, Flo Health either approved those statements or failed to timely correct them in service of their ongoing scheme to conceal the true nature of their conduct.

86.     Plaintiff and Class Members could not, with due diligence, have discovered the full scope of Flo Health's conduct, due in no small part to Flo Health's deliberate efforts to conceal it. All applicable statutes of limitation also have been tolled by operation of the discovery rule. Under the circumstances, Flo Health was under a duty to disclose the nature and significance of their data and privacy policies and practices, but did not do so. Flo Health therefore is estopped from relying on any statute of limitations.

87.     Flo Health's fraudulent concealment and omissions are common to Plaintiff and all Class members.

## CLASS ACTION ALLEGATIONS

88.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class:

> All natural persons residing in California who used the Flo App during the period from June 2016 through the present, inclusive (the "Class Period")."[17]

89.     Excluded from the Class is: (1) any Judge or Magistrate presiding over this action and any members of their immediate families; (2) the Defendant, Defendant's subsidiaries, affiliates, parents, successors, predecessors, and any entity in which the Defendant or its parent has a controlling interest and their current or former employees, officers, and directors; and (3)

---

[17]     Plaintiff has defined the Class based on currently available information and hereby reserve  the right to amend the definition of the Class, including, without limitation, the Class Period.

Plaintiff's counsel and Defendant's counsel.

90.     **Numerosity:** The exact number of members of the Class is unknown and unavailable to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of millions of individuals, and the members can be identified through Defendant's records.

91.     **Predominant Common Questions:** The Class' claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not limited to, the following:

a.     Whether Defendant violated Plaintiff's and Class members' privacy rights;

b.     Whether Defendant's acts and practices complained of herein would be highly offensive to a reasonable person;

c.     Whether Defendant's acts and practices amount to a breach of contract;

d.     Whether Defendant's acts and practices amount to a breach of implied contract;

e.     Whether Defendant was unjustly enriched;

f.     Whether Defendant violated the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*;

g.     Whether Defendant's acts and practices violated California's Confidentiality of Medical Information Act, Civil Code §56, *et seq.*;

h.     Whether Defendant's acts and practices violated California's Business and Professions Code §17200, *et seq.*;

i.     Whether Defendant's acts and practices violated California's Online Privacy Protection Act, §22575, *et seq.*;

j.     Whether Defendant's acts and practices violated California's Consumer Privacy Act, §1798.100, *et seq.*;

k.     Whether Defendant's acts and practices violated California's Constitution, Art. 1, §1;

l.     Whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to, injunctive relief, restitution, and disgorgement; and,

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

m.   Whether Plaintiff and the Class members are entitled to actual, statutory, punitive or other forms of damages, and other monetary relief.

92.   **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class. The claims of Plaintiff and the members of the Class arise from the same conduct by Defendant  and are based on the same legal theories.

93.   **Adequate Representation:** Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and class actions, including litigations to remedy privacy violations. Plaintiff has no interest that is antagonistic to those of the Class, and Defendant has no defenses unique to any Plaintiff.   Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

94.   **Substantial Benefits:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

95.   Plaintiff reserves the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CALIFORNIA LAW APPLIES TO THE ENTIRE CLASS

96.   California substantive laws apply to every member of the Class. Flo Health's Terms of Use states "These Terms of Use (this 'Agreement') is a legal agreement between [users] and Flo Health, Inc."

97.   This agreement states that "[a]ny dispute arising from this Agreement shall be

governed by the laws of the State of California without regard to its conflict of law provisions. Sole and exclusive jurisdiction for any action or proceeding arising out of or related to this agreement shall be in an appropriate state or federal court located in San Francisco County, State of California . . . ."[18]

98.     By choosing California law for the resolution of disputes in the agreement, Flo Health concedes that it is appropriate for this Court to apply California law to the instant dispute. Further, California's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend. § 1, and the Full Faith and Credit Clause, Art. IV. § 1 of the U.S. Constitution. California has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and Class members, thereby creating state interests to ensure that the choice of California state law is not arbitrary or unfair.

99.     Flo Health maintains a California postal address at 541 Jefferson Ave, Suite 100, Redwood City, CA 94063-1700 and conducts substantial business in California, such that California has an interest in regulating Defendant's conduct under its laws. Defendant's decision to reside in California and avail itself of California's laws, renders the application of California law to the claims herein constitutionally permissible.

100.    The application of California laws to the Class is also appropriate under California's choice of law rules because California has significant contacts to the claims of Plaintiff and the proposed Class, and California has a greater interest in applying its laws here than any other interested state.

### CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**Common Law Invasion of Privacy – Intrusion Upon Seclusion**
**(On Behalf of Plaintiff and the Class)**

101.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

---

[18] *Terms of Use*, FLO HEALTH, INC., https://flo.health/terms-of-service (effective Feb. 5, 2020).

102.    Plaintiff's asserting claims for intrusion upon seclusion must plead (1) that the defendant intentionally intruded into a place, conversation, or matter as to which plaintiff had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person.

103.    Flo Health's disclosure of  Plaintiff's and Class members' intimate health data, including information concerning physical and emotional health, family planning, and romantic lifestyle, as well as their interests in making intimate personal decisions or conducting personal activities, constitutes an intentional intrusion upon Plaintiff's and Class members' solitude or seclusion in that Flo Health shared these intimate personal details that were intended to stay private with third parties without users consent, and despite Flo Health's express promises that it would not do so.

104.    Plaintiff and Class members had a reasonable expectation of privacy in their intimate health data. Plaintiff and Class members did not consent to, authorize, or know about Flo Health's intrusion at the time it occurred. Plaintiff and Class members never agreed that Flo Health could disclose their intimate health data.

105.    Flo Health's intentional intrusion on Plaintiff's and Class members' solitude or seclusion without consent would be highly offensive to a reasonable person. Plaintiff and Class members reasonably expected, based on Flo Health's repeated assurances, that their intimate health data would not be disclosed. Defendant's conduct is especially egregious as it failed to contractually restrict what third parties do with Plaintiff's and Class members' intimate health data once it is disclosed.

106.    Given the extremely intimate nature of the data Flo Health collected and disclosed, such as private details about users' sexual activity, menstrual cycles, and physical and mental health, this kind of intrusion would be (and in fact is) highly offensive to a reasonable person.

107.    The highly offensive nature of Flo Health's intentional intrusion into Plaintiff's and Class members' personal affairs is confirmed by its FTC settlement and the public outrage and hundreds of complaints received by Flo Health after its data sharing practices were disclosed,

instructing Flo Health to delete their data or their account or that they would be deleting their account.

108.   Users have expressed extreme outrage in response to Flo Health's data sharing practices:

a.   "I'm absolutely [sic] disgusted at this invasion of my most personal information."

b.   "This is private personal data and I feel disgusted that you are now making this data available to third parties."

c.   "Why would you EVER think it is ok to share that personal, private information with a third party?"

109.   Alice Berg, a 25-year old student, told the Wall Street Journal "I think it's incredibly dishonest of them that they're just lying to their users especially when it comes to something so sensitive."[19]

110.   The disclosure of intimate health data from millions of individuals without consent is also highly offensive because it violates expectations of privacy that have been established by general social norms. Privacy polls and studies consistently show that the overwhelming majority of Americans believe one of the most important privacy rights is the need for an individual's affirmative consent before personal data, like intimate health data, is harvested or shared.

111.   As a result of Defendant's actions, Plaintiff and Class members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

112.   Plaintiff and Class members have been damaged as a direct and proximate result of Defendant's invasion of their privacy and are entitled to just compensation, including monetary damages.

113.   Plaintiff and Class members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interests as well as a disgorgement of profits made by Flo Health as a result of its

---

[19] Sam Schechner and Mark Secada, *You Give Apps Sensitive Personal Information. Then They Tell Facebook*, WALL STREET JOURNAL, (Feb. 22, 2019 11:07 AM), https://www.wsj.com/articles/you-give-apps-sensitive-personal-information-then-they-tell-facebook-11550851636.

intrusions upon Plaintiff's and Class members' privacy.

114.    Plaintiff and Class members are also entitled to punitive damages resulting from the malicious, willful and intentional nature of Defendant's actions, directed at injuring Plaintiff and Class members in conscious disregard of their rights. Such damages are needed to deter Defendant from engaging in such conduct in the future.

115.    Plaintiff also seeks such other relief as the Court may deem just and proper.

**SECOND CLAIM FOR RELIEF**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

116.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

117.    Plaintiff entered into a contract with Defendant by downloading and using the Flo App. In connection with using the Flo App, both parties agree to abide by Flo Health's Terms of Use ("TOU"). Plaintiff has fully complied with her obligations under the TOU with regard to her use of Flo Health's product and services.

118.    The TOU states that "[b]y creating an account or accessing or using the App, you acknowledge that you accept and agree to be bound by the terms of this Agreement." Plaintiff and Defendant are subject to Flo Health's Privacy Policy, which is incorporated into the TOU.[20]

119.    Flo Health's Privacy Policy  states that it only provides users' personal data to third parties when that data "is  reasonably necessary to perform their work," which may include "suppl[ying] software applications, web hosting, and other technologies for the App." Flo Health breached the contract because it did not disclose this information to "provide services in connection with the App." Flo Health allowed third parties to use this information for any purposes, including for their own benefit like research, development, and targeted advertising that was unrelated to the stated purpose disclosed by the Privacy Policy.

120.    Flo Health's Privacy Policy stated that any information shared with third parties

---

[20] *Terms of Use*, FLO HEALTH, INC., https://flo.health/terms-of-service (effective Feb. 5, 2020).

"exclud[ed] information regarding your marked cycles, pregnancy, symptoms, notes and other information that is entered by you and that you do not elect to share." Flo Health breached the contract because it disclosed users' intimate health data regarding marked cycles, fertility cycles, pregnancy and other health information in the form of Custom App Events to third parties.

121.  Flo Health's Privacy Policy stated that Flo Health would not disclose "any data related to health" to either of the mobile analytics firms AppsFlyer or Flurry. Flo Health breached the contract because it disclosed to AppsFlyer and Flurry Custom App Events which contained intimate health data.

122.  Flo Health's Privacy Policy stated that Flo Health would only provide "non-personally identifiable information," "Personal Data like device identifiers," or "device identifiers" to Facebook, Google, and Fabric. Flo Health breached the contract because it provided Facebook, Google and Fabric access to Custom App Events which conveyed identifiable information and intimate health data, unlike device identifiers.

123.  By disclosing Plaintiff's and Class members' intimate health data to third parties without their consent, Flo Health has breached material terms of the contract.

124.  As a result of Flo Health's breach of contract, Plaintiff and Class members have suffered damages in an amount to be determined at trial. In addition, or in the alternative, Plaintiff and Class members seek damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interest. By sharing their intimate health data with third parties without consent, Flo Health invaded Plaintiff's and Class members privacy interests. As a result of Flo Health's breach of the TOU and Privacy Policy, Plaintiff and Class members have suffered damages.

### THIRD CLAIM FOR RELIEF
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**
**(In the Alternative)**

125.  Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

126.    Plaintiff alleges this claim in the alternative to her Second Claim for Relief.

127.    Plaintiff entered into an implied contract with Defendant by downloading and using the Flo App. In connection with using the Flo App, both parties agree to abide by Flo Health's Terms of Use ("TOU"). Plaintiff has fully complied with her obligations under the TOU with regard to her use of Flo Health's product and services.

128.    Defendant solicited and invited prospective customers such as Plaintiff and Class members to use the Flo App with claims that they care about Plaintiff and Class members privacy rights.

129.    Defendant's offer included specific assurances from Flo Health's privacy policy, including that Flo Health would only share "certain" personal data with third parties, limited to only the "information that is necessary to perform their work" in support of the Flo App.

130.    Plaintiff and Class members accepted Defendant's offers by downloading the Flo App and entering intimate health data into the Flo App because of these promises.

131.    In entering into such implied contracts, Plaintiff and Class members reasonably believed that Defendant would comply with relevant laws and regulations, including privacy laws, as well as their own assurances.

132.    Plaintiff and Class members reasonably believed that Defendant would not disclose intimate information regarding their fertility cycles, lifestyle choices, and romantic relationships with third parties, as stated in its privacy policy.

133.    Defendant's implied promise not to disclose Plaintiff's and Class members sensitive personal information to third parties is evidenced by, *e.g.*, the representations in Flo Health's terms of use and privacy policy set forth above.

134.    Plaintiff and Class members would not have downloaded or made use of the Flo App in the absence of such promises.

135.   Plaintiff and Class members fully performed their obligations under the implied contracts with Defendant by abstaining from making any "forbidden use" of the Flo App, as dictated by the Flo Health terms of service.[21]

136.   Defendant breached its implied contract with Plaintiff and Class members by secretly collecting and disclosing sensitive personal data for Defendant's own benefit, in violation of the terms of use and privacy policy.

137.   By disclosing Plaintiff's and Class members' intimate health data to third parties without their consent, Flo Health has breached material terms of the implied contract.

138.   As a result of Flo Health's breach of implied contract, Plaintiff and Class members have suffered damages in an amount to be determined at trial. In addition, or in the alternative, Plaintiff and Class members seek damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interest. By sharing their intimate health data with third parties without consent, Flo Health invaded Plaintiff's and Class members privacy interests. As a result of Flo Health's breach of the TOU and Privacy Policy, Plaintiff and Class members have suffered damages.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**
**(In the Alternative)**

139.   Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

140.   Plaintiff alleges this claim in the alternative to her Second Claim for Relief.

141.   Plaintiff and Class members conferred a benefit upon Flo Health in the form of sensitive personal data that Defendant collected from Plaintiff and Class members, without authorization and proper compensation. Defendant has collected, disclosed, and otherwise misused this information for its own gain, providing Defendant with economic, intangible, and other benefits, including substantial monetary compensation from third parties who received Plaintiff's

---

[21] *Terms of Use*, FLO HEALTH, INC., https://flo.health/terms-of-service (effective Feb. 5, 2020).

1    and Class members' sensitive personal data.

2          142.   Defendant unjustly retained those benefits at the expense of Plaintiff and Class

3    members because Defendant's conduct damaged Plaintiff and Class members, all without

4    providing any commensurate compensation to Plaintiff and Class members.

5          143.   The benefits that Defendant derived from Plaintiff and Class members rightly

6    belong to Plaintiff and Class members. It would be inequitable under unjust enrichment principles

7    in California and every other state for Defendant to be permitted to retain any of the profit or other

8    benefits it derived from the unfair and unconscionable methods, acts, and trade practices alleged in

9    this Complaint.

10         144.   Defendant should be compelled to disgorge in a common fund for the benefit of

11   Plaintiff and Class members all unlawful or inequitable proceeds it received, and such other relief

12   as the Court may deem just and proper.

13                            **FIFTH CLAIM FOR RELIEF**
                          **Stored Communications Act ("SCA")**
14                              **18 U.S.C. § 2702,** *et seq.*
                           **(On Behalf of Plaintiff and the Class)**
15

16         145.   Plaintiff re-alleges and incorporate the preceding allegations of this Complaint with

     the same force and effect as if fully restated herein.
17

18         146.   The SCA provides that a person "providing an electronic communication service to

19   the public shall not knowingly divulge to any person or entity the contents of a communication

     while in electronic storage by that service[.]" 18 U.S.C. § 2702(a)(1).
20

21         147.   "Electronic communication" is broadly defined as "any transfer of signs, signals,

22   writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a

23   wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or

     foreign commerce[.]"  18 U.S.C. § 2510(12).
24

25         148.   "Electronic storage" is defined as "any temporary, intermediate storage of a wire or

26   electronic communication incidental to the electronic transmission thereof; and any storage of

27   such communication by an electronic communication service for purposes of backup protection of

28

1  such communication[.]"  18 U.S.C. § 2510(17)(A)-(B).

2      149.  "Electronic communication service" is defined as "any service which provides to

3  users thereof the ability to send or receive wire or electronic communications[.]" 18 U.S.C. §

4  2510(15).

5      150.  "Person" is defined as "any employee, or agent of the United States or any State or

6  political subdivision thereof, and any individual, partnership, association, joint stock company,

7  trust, or corporation." 18 U.S.C. § 2510(6).

8      151.  Flo Health, as a corporation, is a person as defined under 18 U.S.C. § 2510(6).

9      152.  Flo Health provides a service that allows Plaintiff and Class members to send and

10  receive electronic communications from Flo Health, fellow app users, and medical experts. Flo

11  Health provides this service "to the public" because Flo Health makes its Flo App freely available

12  to millions of individuals, including Plaintiff and Class members.

13      153.  Plaintiff and Class members reasonably expected that Defendant's service did not

14  include disclosing their "electronic communications," *i.e.*, their data (as broadly defined), based, in

15  part, on Defendant's failure to provide *any* disclosures or obtain consent for permission to do so,

16  as well as Flo Health's affirmative misrepresentations that it would not disclose this information.

17      154.  Defendant stores Plaintiff's and Class members' electronic communications on

18  external servers and intentionally divulged them by disclosing this information to third parties, in

19  reckless disregard for Plaintiff's and Class members' privacy rights for Defendant's own financial

20  benefit.

21      155.  Defendant's actions were at all relevant times intentional, willful, and knowing, as

22  evidenced by the fact that this was Defendant's routine business practice and it purposefully failed

23  to disclose this practice to consumers.

24      156.  As a result of Defendant's violations of the SCA, Plaintiff and Class members have

25  suffered harm and injury, including but not limited to the invasion of their privacy rights.

26      157.  Pursuant to 18 U.S.C. § 2707, Plaintiff and Class members are entitled to:

27  (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial,

28

assessed as the sum of the actual damages suffered by Plaintiff and the Class and any profits made by Defendant as a result of the violation, but in no case less than the minimum statutory damages of $1,000 per person; and (3) reasonable attorneys' fees and other litigation costs reasonably incurred.

## SIXTH CLAIM FOR RELIEF
**California Confidentiality of Medical Information Act ("CMIA")**
**Civil Code Section 56.06**
**(On Behalf of Plaintiff and the Class)**

158.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

159.    Defendant is deemed a provider of health care under Civil Code Section 56.06, subdivision (b), because it offers software to consumers that is designed to maintain medical information for the purposes of allowing its users to manage their information or for the diagnosis, treatment, or management of a medical condition.

160.    Specifically, the Flow App is designed for users to store, email, and print information relating to their reproductive health, such as ovulation and menstrual cycles, and/or for the diagnoses, treatment, or management of users seeking to become pregnant or treat infertility. Defendant is therefore subject to the requirements of the CMIA and obligated under subdivision (b), to maintain the same standards of confidentiality required of a provider of health care with respect to medical information its maintains on behalf of users.

161.    Defendant violated Civil Code section 56.06 because it disclosed to third parties Plaintiff's and Class members' intimate health data without consent, including information concerning physical and emotional health, family planning, and romantic lifestyle, as well as their interests in making intimate personal decisions or conducting personal activities.

162.    Defendant also negligently disclosed medical information in violation of Civil Code section 56.36 subdivisions (b) and (c) through the unauthorized disclosure of Plaintiff's and Class members' intimate health data.

1

2

3

**SEVENTH CLAIM FOR RELIEF**
**CMIA**
**Civil Code Section 56.101**
**(On Behalf of Plaintiff and the Class)**

4

5

163.    Plaintiff re-allege and incorporate the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

6

7

8

9

164.    Civil Code section 56.101, subdivision (a) requires that every provider of health care "who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein."

10

11

12

13

14

165.    Defendant failed to maintain, preserve, and store medical information in a manner that preserves the confidentiality of the information because it disclosed to third parties Plaintiff's and Class members' intimate health data without consent, including information concerning physical and emotional health, family planning, and romantic lifestyle, as well as their interests in making intimate personal decisions or conducting personal activities.

15

16

17

166.    Defendant's failure to maintain, preserve, and store medical information in a manner that preserves the confidentiality of the information was, at the least, negligent and violates Civil Code section 56.36 subdivisions (b) and (c).

18

19

20

**EIGHTH CLAIM FOR RELIEF**
**CMIA**
**Civil Code Section 56.10**
**(On Behalf of Plaintiff and the Class)**

21

22

167.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

23

24

25

168.    Civil Code section 56.10, subdivision (a), prohibits a health care provider from disclosing medical information without first obtaining an authorization, unless a statutory exception applies.

26

27

169.    Defendant disclosed medical information without first obtaining authorization when it disclosed to third parties Plaintiff's and Class members' intimate health data without

28

34

consent, including information concerning physical and emotional health, family planning, and romantic lifestyle, as well as their interests in making intimate personal decisions or conducting personal activities. No statutory exception applies. As a result, Defendant violated Civil Code section 56.10, subdivision (a).

170.    Defendant also negligently disclosed medical information in violation of Civil Code section 56.36 subdivisions (b) and (c) through the unauthorized disclosure of Plaintiff's and Class members' intimate health data.

## NINTH CLAIM FOR RELIEF
### Violations of Business and Professions Code Section 17200 Et. Seq.
### (On Behalf of Plaintiff and the Class)

171.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

172.    Defendant's has engaged in unlawful, unfair, or fraudulent acts or practices, which constitute unfair competition within the meaning of Section 17200 of the Business and Professions Code.

173.    Defendant engaged in unfair business practices because it made material misrepresentations and omissions, both directly and indirectly, concerning the information that Flo Health assured users it would not share with third parties, which deceived and misled users of the Flo App.

174.    Defendant engaged in fraudulent business practices because it intentionally misleads and deceives users of the Flo App to believe that Defendant adheres to its representations in the applicable privacy policy. Plaintiff and Class members acted reasonably when they downloaded the Flo App and did so in an effort to monitor their health and well-being. Plaintiff and class members were injured as a result of Defendant's violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.

175.    Defendant engaged in unlawful business practices because Defendant violated applicable California and Federal statutes and regulations, as well as violating California's Constitutional Right to Privacy, as alleged herein.

176.    Defendant's violations were, and are, willful, deceptive, unfair, and unconscionable.

177.    Defendant's practices are therefore unfair, unlawful, and fraudulent under Cal. Bus. & Prof. Code Section 17200, *et seq.*

### TENTH CLAIM FOR RELIEF
**Violation of Cal. Bus. & Prof. Code § 17200, *et seq.***
**California's Online Privacy Protection Act, Cal. Bus. & Prof. Code § 22575, *et seq.***
**("CalOPPA")**
**(On Behalf of Plaintiff and the Class)**

178.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

179.    Defendant engaged in business acts and practices deemed "unlawful" under the Unfair Competition Law found at Section 17200, *et seq.*, of the Bus. & Prof. Code, because Flo Health disclosed to third parties Plaintiff's and Class members' intimate health data without consent, including information concerning physical and emotional health, family planning, and romantic lifestyle, as well as their interests in making intimate personal decisions or conducting personal activities, and made material misrepresentations and omissions in the applicable privacy policy concerning the information that Flo Health assured users it would not share with third parties.

180.    CalOPPA applies to Flo Health because it is an operator of a commercial website and online services that collect personally identifiable information. Cal. Bus. & Prof. Code § 22575, et seq.

181.    CalOPPA defines personally identifiable information as first and last name; home or other physical address, including street name and name of a city or town; e-mail address; telephone number; social security number; any other identifier that permits the physical or online contacting of a specific individual; ***information concerning a user that the website or online service collects online from the user and maintains in personally identifiable form in combination with an identifier described in this subdivision***. *Id.* (emphasis added).

182.    The intimate health data Flo Health collected and shared with third parties is "personally identifiable information."

183.    Flo Health violates CalOPPA because it assured users that it would not share their intimate health data but nevertheless disclosed this information to third parties without consent.

184.    Flo Health violates CalOPPA because its privacy policy does not identify the categories of third-party persons or entities with whom Flo Health may share that data.

185.    Plaintiff, individually and on behalf of the CalOPPA Class  seek: (i) an injunction prohibiting Flo Health from further misrepresenting the purposes for which it or entities to whom it discloses data collect, maintain, use, or disclose the data and to implement functionality sufficient to prevent the unlawful collection of users' intimate health data in the future; (ii) relief under Cal. Bus. & Prof. Code § 17200, *et seq.*, including, but not limited to, restitution to Plaintiff and other members of the CalOPPA class of money or property Flo Health acquired by means of its unlawful business practices; and, as a result of bringing this action to vindicate and enforce an important right affecting the public interest, (iii) reasonable attorney's fees (pursuant to Cal. Code of Civ. P. § 1021.5).

### ELEVENTH CLAIM FOR RELIEF
**Violation of the California Consumer Privacy Act**
**Cal. Civ. Code § 1798.100, *et seq.***
**(On Behalf of Plaintiff and the Class)**

186.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

187.    The California Consumer Privacy Act of 2018 ("CCPA") went into effect on January 1, 2020. This comprehensive privacy law was enacted to protect consumers' personal information from collection and use by businesses without appropriate notice and consent.

188.    Through the above-detailed conduct, Flo Health violated the CCPA by, among other things, its failure to implement and maintain reasonable security procedures to prevent the disclosure of nonencrypted or nonredacted personal information as defined in Civil Code 1798.81.5 (A)(1).

189.    The disclosure of personal information of users equates to that of a data breach

wherein Flo Health disclosed Plaintiff's and the Class members' nonencrypted and nonredacted personal information to other companies, likely for monetary gain.  Such unauthorized disclosure violates section Civil Code section 1798.150 and puts into the hands of other companies Plaintiff's and the Class members' highly intimate personal information as defined by section 1798.140.

190.    In accordance with Civil Code section 1798.150(b), Plaintiff has served Defendant with notice of these CCPA violations and a demand for relief by certified mail, return receipt requested.    However, Flo Health cannot cure the violation by clawing back the data shared because Flo Health has no control over the data once it has been shared with businesses Flo Health does not control, e.g. Facebook and Google.

191.    On behalf of Class members, Plaintiff seeks injunctive relief in the form of an order enjoining Defendant from continuing to violate the CCPA.  If Defendant fails to properly respond to Plaintiff's notice letter or agree to timely and adequately rectify the violations detailed above, or, more likely, cannot rectify the violations detailed above, Plaintiff also will seek actual, punitive, and statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident, whichever is greater; restitution; attorneys' fees and costs (pursuant to Cal. Code of Civ. P. § 1021.5) as a result of bringing this action to vindicate and enforce an important right affecting the public interest; and any other relief the Court deems proper as a result of Defendant's CCPA violations.

### TWELFTH CLAIM FOR RELIEF
**Invasion of Privacy and Violation of the California Constitution, Art. 1, § 1**
**(On Behalf of Plaintiff and the Class)**

192.    Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

193.    Plaintiff had and continues to have privacy rights in her personal information, identities, data, and medical information pursuant to Article One, Section One of the California Constitution.

194.    Defendant, through unlawful means, violated the California constitutional privacy

rights of Plaintiff by Defendant's unauthorized access, copying, distribution, use, commercialization, and/or sale of Plaintiff's private and personal information, identities, data, and medical information.

195.   Defendant had no authorization or privilege to gain access, copy, distribute, use, commercialize, and/or sell Plaintiff's private and personal information, identities, data, and medical information.

196.   As a consequence, Plaintiff has suffered and will continue to suffer damages.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself and the proposed Class respectfully requests that the Court enter an order:

A.     Certifying the Classes and appointing Plaintiff as Class Representatives;

B.     Finding that Defendant's conduct was unlawful as alleged herein;

C.     Awarding declaratory relief against Defendant;

D.     Awarding such injunctive and other equitable relief as the Court deems just and proper;

E.     Awarding Plaintiff and the Class members statutory, actual, compensatory, consequential, punitive, and nominal damages, as well as restitution and/or disgorgement of profits unlawfully obtained;

F.     Awarding Plaintiff and the Class members pre-judgment and post-judgment interest;

G.     Awarding Plaintiff and the Class members reasonable attorneys' fees, costs, and expenses; and

H.     Granting such other relief as the Court deems just and proper.

1

## **DEMAND FOR JURY TRIAL**

2       Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury

3 trial as to all issues triable by a jury.

4

Dated: February 12, 2021

5
                                    /s/____*James M. Wagstaffe*_____
6                                   James M. Wagstaffe (95535)
                                    Frank Busch (258288)
7                                   **WAGSTAFFE, VON LOEWENFELDT,**
                                    **BUSCH & RADWICK LLP**
8                                   100 Pine Street, Suite 725
                                    San Francisco, CA 94111
9                                   Tel: (415) 357-8900
                                    Fax: (415) 357-8910
10                                  wagstaffe@wvbrlaw.com
                                    busch@wvbrlaw.com
11

12                                  Carol C. Villegas (*pro hac vice* forthcoming)
                                    Michael P. Canty (*pro hac vice* forthcoming)
13                                  Melissa H. Nafash (*pro hac vice* forthcoming)
                                    Ross M. Kamhi (*pro hac vice* forthcoming)
14                                  **LABATON SUCHAROW LLP**
                                    140 Broadway
15                                  New York, NY 10005
                                    Tel: (212) 907-0700
16                                  Fax: (212) 818-0477
17
                                    cvillegas@labaton.com
18                                  mcanty@labaton.com
                                    mnafash@labaton.com
19                                  rkamhi@labaton.com
20
                                    *Attorneys for Plaintiff and the Proposed Class*
21

22

23

24

25

26

27

28